UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BRAYTON SOLIS GOMEZ,

Petitioner,

v.

CHRISTOPHER LAROSE, et al.

Respondents.

Case No.: 26-cv-5750-BJC-SBC

**ORDER GRANTING AMENDED PETITION FOR HABEAS CORPUS**

**[ECF Nos. 6-8]**

On October 7, 2026, Petitioner Brayton Solis Gomez, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus. ECF No. 1. On October 9, 2026, the Court entered a briefing schedule, in which the Court also conditionally appointed the Federal Defenders of San Diego, Inc. ("Federal Defenders") as counsel for Petitioner. ECF No. 3. On October 15, 2026, the Federal Defenders, on behalf of Petitioner, filed an Amended Petition for Writ of Habeas Corpus ("Amended Petition"). ECF No. 6. On October 23, 2026, Respondents filed a return, to which Petitioner filed a traverse on October 26, 2026. ECF Nos. 7–8. For the reasons set forth below, the Court **GRANTS** the Amended Petition (ECF No. 6) and orders Petitioner's immediate release.

# I. BACKGROUND

Petitioner, a Nicaraguan national and citizen, fled Nicaragua because he feared prosecution. ECF No. 6-1 (Solis Gomez Declaration) at ¶ 1. On November 8, 2023, Petitioner flew into Miami and, that same day, he was granted humanitarian parole and began the process of applying for asylum. ECF No. 6 at 1; *see also* ECF No. 6-1 at ¶ 2; ECF No 7 at 2 ("Petitioner was previously released from immigration custody on parole issued under 8 U.S.C. § 1182(d)(5)."). Since then, Petitioner has also received a work permit, a Social Security number, and a driver's license. ECF No. 6 at 1; ECF No. 6-1 at ¶ 3. Petitioner has no criminal history. *Id.*

On September 9, 2026, Immigrations and Customs Enforcement ("ICE") officers, "in unmarked agency vehicles" approached Petitioner at his place of work, asking him questions about where Petitioner was from. ECF No. 6-1 at ¶ 4; ECF No. 7-1 at 3. According to Petitioner's Form I-213, when Petitioner was first approached, he spoke with the officers and gave him his identification when asked. ECF No. 7-1 at 3. Then, after further questioning about his immigration status, Petitioner allegedly "attempted to flee the area" and "threw his coffee at officers behind him." *Id.* Petitioner was eventually caught and then arrested. *Id.* Petitioner alleges that, during the arrest, the ICE officers did not explain why they were arresting him when "they previously granted [him] humanitarian parole" and that they "never showed [him] a warrant[.]" ECF No. 6-1 at ¶ 4. The Form I-213 reasons that a warrantless arrest necessary "due to the likeliness of escape before a warrant can be obtained[.]" ECF No. 7-1 at 3. It also indicates that Petitioner entered the United States "through the Nicaraguan Humanitarian Parole Program." *Id.* There is no indication that Petitioner's parole was revoked or otherwise terminated. *See* ECF No. 7 at 2 (conceding Petitioner was paroled but that "Respondents have insufficient information regarding termination of that parole, pursuant to 8 C.F.R. § 212.5(e)(2), to provide to the Court"). Petitioner was transferred to the Otay Mesa Detention Center, where he is currently detained. ECF No. 6 at 3; ECF No. 6-1 at ¶ 4. Petitioner has not received a bond hearing. ECF No. 7 at 2, 4, n.4 (admitting Petitioner has not received a bond hearing based

on the "the government's position that Petitioner is subject to mandatory detention under § 1225(b)(2)").

On October 15, 2026, Petitioner filed an Amended Petition, asserting three claims – all of which Petitioner argues warrant his immediate release. *See* ECF No. 6. First, Petitioner contends that ICE acted arbitrarily and capriciously in violation of the Administrative Procedure Act ("APA") because there is no evidence that Petitioner's parole was revoked when he was detained, and that, even if his parole was revoked, such termination failed to comply with 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212(e). *Id.* at 3–5. Second, Petitioner claims that the revocation of his parole as well as his subsequent detention violated the Due Process Clause. *Id.* at 5–7. Lastly, Petitioner argues that his warrantless arrest failed to comply with 8 U.S.C. § 1226 and § 1357(a)(2). *Id.* at 7–9.

On October 23, 2026, Respondents filed their Return, in which they concede that "Petitioner was previously released from immigration custody on parole" and that they "have insufficient information regarding termination of that parole, pursuant to 8 C.F.R. § 212.5(e)(2), to provide to the Court." ECF No. 7 at 2. However, despite acknowledging that this Court has previously found 8 U.S.C. § 1226 applies to detained noncitizens who were previously granted parole, Respondents contend that it is the "government's position that Petitioner is subject to mandatory detention under § 1225(b)(2)." *Id.* Further, Respondents justify their warrantless arrest because, when Petitioner was approached, "he attempted to flee[.]" *Id.* at 3. Nonetheless, Respondents claim that "the government does not oppose the petition and defers to the Court on the appropriate relief." *Id.* at 4. On October 26, 2026, Petitioner filed a Traverse, noting Respondents' concession that Petitioner was released on humanitarian parole and that Respondents "do[] not oppose the petition[.]" ECF No. 8 at 2. Accordingly, Petitioner argues the appropriate remedy, under these circumstances, is immediate release. *Id.* at 2–3.

## II. <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).

"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.*

## III. DISCUSSION

The Fifth Amendment guarantees that "[n]o person shall be … deprived of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. This right extends to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 681 (2001); *see, e.g.*, *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."). Accordingly, once a noncitizen has "passed through our gates," they "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law" occur. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Due Process proceedings generally "require[] some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original); *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process").

Respondents do not contest that Petitioner "passed through [the] gates" on November 8, 2023, when he received parole and then entered the United States. ECF No. 6 at 2; ECF No. 7 at 2. Nonetheless, Respondents, in a footnote, quote language from § 1182(d)(5)(A), the statute under which Petitioner was granted parole, for support that Petitioner's detention is proper under 8 U.S.C. § 1225 because his parole is only "temporar[y]," "not regarded as an admission," and subject to termination "when the

purposes of such parole … have been served[.]" ECF No. 7 at 2, n.1. The Court disagrees. The law is clear that noncitizens *already* in the interior of the United States are subject to 8 U.S.C. § 1226—not 8 U.S.C. § 1225. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) (Section 1226 "applies to [noncitizens] already present in the United States"); *see also Rodriguez Vasquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026) (concluding that "§ 1225(b)(2)(A) … is best construed as applying to [noncitizens] entering the United States at the bonder," whereas "Section 1226, by contrast, is best understood as governing inadmissible and deportable [noncitizens] present in the interior of the United States"). This includes applicants granted humanitarian parole under § 1182(d)(5)(A). *See, e.g.*, *Maurice v. Mullin*, 2026 WL 3270023, at *2 (S.D. Cal. Oct. 30, 2026) (finding that, "while a noncitizen may not be deemed admitted in the United States pursuant to § 1182(d)(5)(A), the noncitizen is not necessarily subject to mandatory detention") (citing *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025)).

Here, the government's decision to release Petitioner from custody on parole created, at that time, "'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [he] fail[s] to live up to the … conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Petitioner relied upon this promise for nearly three years. ECF No. 6 at 2; ECF No. 7 at 2. During this time, Petitioner's liberty interest only strengthened, "crystaliz[ing] into a substantial private interest" that entitles him to due process. *Valera Chuquillanqui v. Kaiser*, 2025 WL 4110424, at *7 (N.D. Cal. Oct. 2, 2025); *see also Noori*, 807 F. Supp. 3d at 1164 (finding petitioner who had been granted parole was "not an 'arriving' noncitizen" but one that ha[d] [been] present in our country for over a year" and that "[t]his substantial amount of time" guarantees him due process before removal). Despite this interest, Petitioner was arrested and detained by ICE officers without any indication that his parole was revoked and without any notice or an opportunity to be heard. *See* ECF No. 6 at 7 ("[B]ecause Respondents did not provide 'proper notice, reasoning, and a pre-deprivation hearing' before revoking parole, [Petitioner's] re-

detention violated the Due Process Clause."); ECF No. 7 at 2 ("Respondents have insufficient information regarding termination of that parole").[1]

Petitioner contends that Respondents violated his due process rights by detaining him without any constitutional process and requests immediate release. *See* ECF No. 6. Respondents do not dispute Petitioner's due process claim or his requested relief. ECF No. 7 at 4 ("[T]he government does not oppose the petition and defers to the Court on the appropriate relief."). The Court finds that Petitioner's due process rights were violated when he was detained without notice or an opportunity to be heard.

Accordingly, the Court **GRANTS** Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 6) and orders the following:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his pre-existing parole;[2]
2. Respondents are **ENJOINED AND RESTRAINED** from detaining Petitioner

---

[1] The Court notes that, "to meet statutory and regulatory requirements, revocation should only occur when (1) the parole's purpose is served or (2) when humanitarian reasons and public benefit are no longer warranted, *and* the noncitizen is provided written notice." *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1167 (S.D. Cal. 2025) (emphasis in original) (citing *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1144-46 (D. Or. 2025)); *see also* 8 C.F.R. § 212.5(e). Simply put, to properly revoke humanitarian parole, Petitioner is "entitled to notice of the reasons for revocation of his parole and a hearing before an immigration judge to determine whether detention is warranted"—*i.e.*, due process—prior to termination. *Perez v. LaRose*, 2025 WL 3171742, at *4 (S.D. Cal. Nov. 13, 2025). Respondents failed to demonstrate that any of the conditions under 8 C.F.R. § 212.5(e) occurred or that Petitioner received any process before his parole was revoked. Based on Respondents' briefing, the Court, therefore, has no reason to find that Petitioner's parole was revoked or otherwise terminated or that Petitioner's detention should be subject to Section 1225 instead of Section 1226.

[2] After a review of Petitioner's claims, the Court finds that Petitioner's APA argument—that Respondents acted arbitrarily and capriciously—in this context, stems from the alleged Due Process violation. Accordingly, the Court finds that it need not separately address Petitioner's APA claim given the Court's conclusion that Respondents' failure to afford Petitioner due process calls for his immediate release. For similar reasons, the Court also need not resolve Petitioner's warrantless arrest claim.

unless Petitioner is provided with notice of the reasons for revocation of parole and a hearing to determine whether detention is warranted.

The Clerk of the Court shall close this matter.

**IT IS SO ORDERED**.

Dated: November 12, 2026

Honorable Benjamin J. Cheeks
United States District Judge